Leahey et al. *v.* Farrell et al. (Commonwealth, Appellant).

Argued March 21, 1949.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Francis J. Gafford,* Deputy Attorney General, with him *T. McKeen Chidsey,* Attorney General, for appellant.

*George M. Spence,* with him *John P. Saylor, Orrin E. Boyle, R. Lawrence Coughlin* and *Spence, Custer, Saylor & Wolfe,* for appellees.

*R. Edgar Leahey*, for Pennsylvania State Association of County Commissioners, amicus curiae.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 23, 1949:

The question presented by this appeal is whether the *Legislature* has the power to regulate, within reasonable limits, the compensation of court stenographers, criers, tipstaves and other court employes or whether such power rests inherently and exclusively in the *Courts*.

Section 23 of the Act of July 5, 1947, P. L. 1308, which amends Section 301 of Article III of the Act of May 2, 1929, P. L. 1278, 16 PS 304, provides that in counties of the second to the eighth classes: ". . . salaries and compensation . . . shall be fixed by the salary board created by this act. . . .

". . . the board shall . . . fix the compensation of all . . . court criers, tipstaves and other court employes, and of all officers, clerks, stenographers and employes appointed by the judges of any court and who are paid from the county treasury. . . .

"Whenever the board shall consider the number or salaries of the court criers or tipstaves or other court employes, the president judge of the court shall sit as a member of the board as long as any matter affecting the court criers, tipstaves or employes of his court is under consideration, and no longer."

The judges of the Court of Common Pleas of Cambria County (a county of the fourth class) not complying with the provisions of the statute, entered an order dated August 2, 1948, increasing the compensation of named official court reporters (stenographers) and directing payment thereof. A certified copy of the order was served upon the County Commissioners and the

County Controller who refused to make the directed payments because of the omission of the judges to comply with the Act. The court reporters thereupon instituted an action in mandamus against the Commissioners and Controller. An answer was filed. The Commonwealth was permitted to intervene as a party defendant. Judge F. CORTEZ BELL, specially presiding, directed a writ of mandamus to issue, ordering payment in accordance with the decree. This appeal followed.

Article V, Section 1 of the Constitution of Pennsylvania, relates to the judicial power and reads: "The *judicial power* of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish." (Italics supplied.) The *fiscal power* is vested in the legislature by Article IX of the Constitution. These are coördinate powers which must be construed to work harmoniously. Under section 16 of Article 3, of the Constitution, it is provided that no money may be paid out of the treasury except upon appropriations made by law.

It is well settled that the legislature may not encroach upon the judiciary in the administration of justice. The late Judge PENROSE, of the Philadelphia Orphans' Court, said in *In the Matter of The American Banking and Trust Company,* 4 District Reports 757, 761:

"There are some things, however, beyond the power of the legislature, even irrespective of constitutional restrictions. It cannot change the laws of nature, the properties of numbers, or the meaning of words. It cannot modify an axiom. Water will not boil at 110° nor freeze at 52°; twelve times twelve will always be one

hundred and forty-four; *insufficient* cannot be made the equivalent of *sufficient; bad* the equivalent of *good;* and things which are not equal to the same thing, will not, in spite of the most solemn enactment to the contrary, be equal to each other. No legislation can make $100,000 or $250,000 sufficient security,—as in the case of the city treasurer or of the register of wills or of a tenant for life of personal estate, for the custody of $300,000, $500,000, or $1,000,000,—even if the fund so asserted to be sufficient be within the jurisdiction of the court or placed within its actual control. No legislation can make security 'good', even if sufficient, where the fund which constitutes it is, avowedly, in a foreign country, incapable of being reached by our process.

"No less clear is it, under the constitutional distribution of governmental powers, that *the legislature cannot dictate to the courts how they shall decide matters coming before them judicially.*" (Italics supplied.)

The legislature cannot, by an act of assembly, overrule a judicial decision: *Greenough v. Greenough,* 11 Pa. 489; it may not direct a statute to be construed in a certain way: *In re East Grant Street,* 121 Pa. 596, 16 A. 366; *Titusville Iron Works v. Keystone Oil Co.,* 122 Pa. 627, 15 A. 917; it cannot grant a new trial: *De Chastellux v. Fairchild,* 15 Pa. 18; or order an illegitimate child to be regarded as legitimate under terms of prior deed: *Appeal of Edwards,* 108 Pa. 283; it may not change the effect of judgments or decrees previously rendered: *Pennsylvania Company, etc., v. Scott,* 346 Pa. 13, 29 A. 2d 328. Conversely, courts may not encroach upon the powers of the legislature. For example: regulation of taxicab service is for the legislature: *Pennsylvania Public Utility Commission v. Israel et al.,* 356 Pa. 400, 52 A. 2d 317, as is payment of informer's fees in escheat: *Edelman v. Boardman, Secretary of Revenue,* 332 Pa. 85, 2 A. 2d 393; or the time

within which ministerial acts must be performed concerning nomination papers in elections: *Socialist Labor Case,* 332 Pa. 78, 1 A. 2d 831.

Control of state *finances* rests with the legislature, subject only to constitutional limitations: *Commonwealth ex rel. Schnader v. Liveright, Secretary of Welfare et al.,* 308 Pa. 35, 161 A. 697. The function of the judiciary to administer justice does not include the power to levy taxes in order to defray the necessary expenses in connection therewith. It is the legislature which must supply such funds. Under the system of division of governmental powers it frequently happens that the functions of one branch may overlap another. But the successful and efficient administration of government *assumes* that each branch will coöperate with the others. As was said by the late Chief Justice MOSCHZISKER (when a judge in Common Pleas No. 3 of Philadelphia) reported in *Commonwealth v. Mathues,* 210 Pa. 372, 406, 59 A. 961: ". . . the presumption always is that public officers will perform a public trust, not that they will default therein or abuse the trust, and we prefer to believe that the legislature have performed, and will continue to perform, their trust, rather than to stand in any fear of a wrong being attempted at some time in the future by one branch of the government against another, even if the power to commit such a wrong be admitted to exist, which we thoroughly believe is not so."

There are many statutes which have been enacted, and are still in operation, which regulate the number and compensation of court employes in the various courts, including the Supreme Court. Apparently the constitutionality of such statutes has never heretofore been questioned: See: 17 PS 1831 et seq.

Should Commissioners, however, neglect or refuse to furnish funds, or sufficient funds, for reasonable

judicial functions, and in consequence the efficient administration of the judicial branch of the government is thereby impaired or destroyed, the courts possess the inherent power to require such necessities to be furnished and to direct payment therefor out of the public treasury: see numerous cases cited in 15 C. J. section 272, p. 900 et seq; 7 Ruling Case Law "Courts" section 12, p. 985; section 62, p. 1033; *County of Lancaster v. Brinthall*, 29 Pa. 38; *McCalmont v. The County of Allegheny*, 29 Pa. 417. See comprehensive opinion of Chief Justice MAXEY (then a judge of the Court of Common Pleas of Lackawanna County) *In re Surcharge of County Commissioners*, 12 D. & C. 471. In that case, it was held that a judge of a court of common pleas possessed the power to appoint a "secretary or clerk", *where no statutory provision existed for such appointment*, at a salary fixed by the court, to be paid by the county. The only limitation on this power was held to be that such appointment should be reasonably necessary. This decision is an accurate statement of the law, with which we are in complete accord.

The question here presented, however, is: *where there exists a statute* regulating the method of determining the number and fixing the salaries of court employes, is such a statute unconstitutional because of encroachment upon the inherent power of the judiciary? Our answer is in the negative. A court must first comply with reasonable fiscal regulations of the legislature. Should the legislature, or the county salary board, act arbitrarily or capriciously and fail or neglect to provide a sufficient number of court employes or for the payment of adequate salaries to them, whereby the efficient administration of justice is impaired or destroyed, the court possesses the inherent power to supply the deficiency. Should such officials neglect or refuse to comply with the reasonable requirements of the court they may be required to do so by mandamus.

While apparently there is no appellate decision in Pennsylvania with parallel facts, the same basic question arose in Montana in *State ex rel. Hillis v. Sullivan,* 48 Mon. 320; 137 Pac. 392. The Court there said, p. 395: *"The very conception of inherent power [in the court] carries with it the implication that its use is for occasions not provided for by established methods.* When we say that it is primarily the duty and right of the sheriff, either in person or by deputy, to perform all the duties for which an attendant upon the district court may be had at public expense, that if additional attendants are required the county through its board of commissioners shall furnish them, that if the county fail in that regard the court may procure them through the sheriff, we express the normal situation, the orderly method which must be observed so long as it is adequate in results. *When, however, these methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not until then does occasion arise for the exercise of the inherent power.* Los Angeles v. Superior Court, 93 Cal. 380, 28 Pac. 1062; County of San Joaquin v. Budd et al., 96 Cal. 47, 30 Pac. 967." (Italics supplied.)

In the present case there was no infringement upon judicial powers when the legislature, in the exercise of its power to regulate the fiscal affairs of the Commonwealth, set up a salary board and established an orderly method of fixing, inter alia, salaries of court employes. It became the duty of the court to comply first with the statutory provisions and to make known to the board its reasonable requirements. It is only when a board acts arbitrarily or capriciously and refuses or neglects to comply with the reasonably necessary requirements

of the court, whereby the administration of justice may be impaired or destroyed, that under the inherent power of the court, orders like that now complained of may be enforced by mandamus. There was no attempt by the court, in this case, to comply first with the statutory provisions.

The order is reversed.