### Commonwealth v. DeArment

*Maura A. Johnston,* deputy attorney general, for the Commonwealth.

*Ellen L. Cohen,* assistant district attorney, for the Commonwealth.

*Harold Miller,* for defendant.

BEHRENS, *J.,* July 24, 1984—The question presented by this case is the validity of the provision of the Pennsylvania Sentencing Guidelines, 204 Pa. Code §§303.1 et seq., which requires courts to complete individual sentencing guideline forms for each sentencing proceeding and to submit copies of these forms to the Pennsylvania Commission on Sentencing.

On May 6, 1983, defendant, Betty DeArment, was sentenced by this court following her entry of a guilty plea to a charge of driving under the influence of alcohol. Because the date of the offense was subsequent to the effective date of the Pennsylvania Sentencing Guidelines, this court gave consideration to the guideline recommendations and imposed a sentence consistent therewith. At the sentencing proceeding, the attorney for the Commonwealth submitted to the court for its use a sentencing guideline form provided by the Pennsylvania Commission on Sentencing which the district attorney's office had partially completed with information regarding defendant, her prior record (indicating no prior record), and the charge against her

in this case. Recognizing the requirement set forth in the sentencing guidelines that the court direct the completion of the form, make it a part of the record in the case within 20 days, and submit a copy to the sentencing commission, this court raised the question of the authority of a legislatively-created commission to direct such action on the part of the judiciary. Accordingly, this court issued a rule to show cause requiring the Commonwealth to provide to the court the legal basis for these requirements. Copies of the rule were ordered to be served on counsel for the parties, the Pennsylvania Attorney General's Office, and the Pennsylvania Commission on Sentencing. A hearing pursuant to the rule was held on July 26, 1983, at which representatives of the attorney general's and district attorney's offices appeared and presented the Commonwealth's position in the matter. In addition, initial and supplementary briefs have been submitted by the Commonwealth for this court's consideration.

On November 26, 1978, the Pennsylvania legislature created the Pennsylvania Commission on Sentencing (hereafter referred to as the "commission"), authorized the commission to adopt guidelines for sentencing in criminal cases, and directed the courts to consider these guidelines in connection with any sentencing proceeding. Act of Nov. 26, 1978, P.L. 1316. These provisions, as subsequently amended, are now set forth at Sections 2151 et seq. and 9721(b) of the Judicial Code, 42 Pa. C.S. §§2151 et seq., 9721(b).

Sections 2151 and 2152 of the Judicial Code establishes the commission and provides that it shall consist of 11 members — four from the legislature, four from the judiciary and three appointed by the Governor. As will be discussed in greater detail hereafter, the commission is empowered, inter alia,

to collect and disseminate information regarding the sentencing process, sentences actually imposed and the effectiveness of sentences imposed; to make recommendations to the legislature concerning modification or enactment of sentencing and correctional statutes; to enter into cooperative arrangements with other governmental agencies; to conduct research, receive testimony and publish data on the sentencing process; and to serve as a clearing house, information center and consultant regarding sentencing practices. 42 Pa. C.S. §2153. Section 2154 directs the commission to adopt guidelines for sentencing to be considered by the courts, and §9721(b) of the sentencing code requires courts to consider the guidelines in connection with the imposition of any sentence covered thereby. 42 Pa. C.S. §§2154, 9721(b). Section 2154 provides:

"The commission shall adopt guidelines for sentencing within the limits established by law which shall be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant. The guidelines shall:

(1) Specify the range of sentences applicable to crimes of a given degree of gravity.

(2) Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon.

(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances.

Section 2155 requires the commission to publish proposed guidelines and hold public hearings thereon. Any guidelines adopted by the commission become effective within 180 days after publication in the Pennsylvania Bulletin unless rejected in their

entirety by concurrent resolution of the General Assembly within 90 days after their publication. 42 Pa. C.S. §2155.

Section 9721 of the sentencing code sets forth the general considerations, alternatives and requirements governing the courts in determining the sentence to be imposed in criminal cases. 42 Pa. C.S. §9721. The 1978 amendment to this section added the following:

"The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant." [42 Pa. C.S. §9721(b)].

The present sentencing guidelines were adopted by the commission on January 5, 1982, and published in the Pennsylvania Bulletin on January 23, 1982. 12 Pa. Bull. 431 (1982). Having not thereafter been rejected by the legislature, the guidelines became effective July 22, 1982. These guidelines essentially create a system whereby an "offense gravity score" and a "prior record score" are determined

for each crime committed by a defendant. The recommended range of possible minimum sentences to be imposed for each offense are derived from a chart utilizing these scores. 204 Pa. Code §§303.2, 303.7, 303.8. Lower and higher minimum sentence ranges are provided for cases involving mitigating or aggravating circumstances. 204 Pa. Code §303.3. Other provisions of the guidelines cover enhancement of the guideline sentence range for offenses involving deadly weapons, the imposition of consecutive sentences, and special provisions relating to charges of driving under the influence of alcohol or a controlled substance. 204 Pa. Code §§303.4, 303.5, 303.6. The sentencing guidelines do not cover fines, restitution or sentences resulting from probation revocations, not do they limit the maximum sentences to be imposed. 204 Pa. Code §§303.1(f) and (g), 303.5(e), 303.9(a).

At issue in the instant proceeding is the provision set forth in the guidelines mandating the completion, filing and submission of a "Pennsylvania Commission on Sentencing Guideline Sentence Form". This provision states:

"A Pennsylvania Commission on Sentencing Guideline Sentence Form shall be completed at the court's direction and shall be made a part of the record no later than 20 days after the date of each sentencing, and a copy shall be sent to the Pennsylvania Commission on Sentencing." [204 Pa. Code §303.1(b)].

The guidelines set forth neither the content nor the format of the form to be utilized. However, a copy of the form prepared and distributed by the commission is included as an exhibit to the Commonwealth's brief and appears to be identical to the form utilized and submitted to the court by the district attorney's office in the instant case. A review of

this form discloses that the information sought by the commission includes: defendant's name, date of birth, sex and race; the type of proceeding giving rise to the conviction; the computation of the prior record score; the name, statutory citation and grade of the offense involved; whether the deadly weapon enhancement is applicable; the "normal", mitigated, and aggravated ranges established by the guidelines for the minimum sentence to be imposed; the actual sentence imposed, including fines, restitution, probation and/or type of incarceration; the basis on which the sentence was imposed; the total minimum and maximum sentences imposed for consecutive prison sentences; a listing of the aggravating and mitigating circumstances involved; and a listing of the court's reasons for any departure from the sentencing guidelines. At the bottom of the form is a blank for the sentencing judge's signature and date.

At the outset it is worthy of note that aside from restating various requirements for sentencing set forth in the Judicial Code, the guidelines contain no provisions which are mandatory on the courts except for completion, filing and submission of its guideline sentence forms. All other provisions of the guidelines are, as the name implies, indeed guidelines for the court's consideration in sentencing as required by the sentencing code. The court may reject entirely the guideline sentence recommendations so long as a contemporaneous written statement of the reasons therefor is included in the record.

The issue before this court is the validity of the requirement established by a legislatively-created commission that members of the judiciary must report to the commission the details of their sentencing decisions in individual criminal cases together with other statistical data on forms supplied by the commission, and must make the completed forms a

part of the case records within a prescribed time period.[1]

The Commonwealth's position is that the sentencing guideline form requirement is a valid one. It argues that: (1) the aforementioned provisions of the Judicial Code empower the commission to collect data on sentences actually imposed, (2) the sentencing form requirement is necessary and proper for carrying out this function, (3) the data thus obtained is essential to the performance of other functions with which the commission is charged, and (4) imposing the requirement on the courts to complete and submit the guideline sentence forms does not constitute an impermissible violation of the doctrine of separation of powers.

The powers and duties of the commission are set forth in Section 2153 of the Judicial Code. 42 Pa. C.S. §2153. Section 2153(a) sets forth the commission's powers as follows:

"The commission, pursuant to rules and regulations, shall have the power to:

(1) Establish general policies and promulgate such rules and regulations *for the commission* as are necessary to carry out the purposes of this subchapter and Chapter 97 (relating to sentencing).

(2) *Utilize, with their consent,* the services, equipment, personnel, information and facilities of Federal, State, local and private agencies and instrumentalities with or without reimbursement therefor.

---

1. The fact that there is judicial representation on the commission renders it no less a legislative entity. The legislature may at any time reduce the number of judicial representatives (already in the minority) on the commission or eliminate this representation altogether.

(3) Enter into and perform such contracts, leases, *cooperative agreements* and other transactions as may be necessary in the conduct of the functions of the commission, with any public agency or with any person, firm, association, corporation, educational institution or nonprofit organization.

(4) *Request* such information, data and reports from any officer or agency of the Commonwealth government as the commission may from time to time require and as may be produced consistent with other law.

(5) *Arrange* with the head of any government unit for the performance by the government unit of any function of the commission, with or without reimbursement.

(6) *Issue invitations requesting* the attendance and testimony of witnesses and the production of any evidence that relates directly to a matter with respect to which the commission or any member thereof is empowered to make a determination under this subchapter.

(7) Establish a research and development program within the commission for the purpose of:

(i) Serving as a clearinghouse and information center for the collection, preparation and dissemination of information on Commonwealth sentencing practices.

(ii) Assisting and serving in a consulting capacity to State courts, departments and agencies in the development, maintenance and coordination of sound sentencing practices.

(8) Collect systematically the data obtained from studies, research and the empirical experience of public and private agencies concerning the sentencing processes.

(9) Publish data concerning the sentencing processes.

(10) *Collect systematically and disseminate information concerning sentences actually imposed.*

(11) Collect systematically and disseminate information regarding effectiveness of sentences imposed.

(12) Make recommendaions to the General Assembly concerning modification or enactment of sentencing and correctional statutes which the commission finds to be necessary and advisable to carry out an effective, humane and rational sentencing policy." (Emphasis added.)

A review of the foregoing specific powers granted to the commission discloses no indication whatever that the legislature intended to vest the commission with the power to require the courts to submit information and data to the commission on individual sentencing decisions. In fact, repeatedly the authority granted to the commission is couched in non-compulsory language. The commission may utilize "with their consent" the services, personnel, facilities, etc., of other agencies and instrumentalities; may enter into "cooperative agreements" with any public or private entity; may "request" information, data and reports from other Commonwealth governmental officers or agencies; may "arrange" with other governmental units for performance of the commission's functions; and may "request" the attendance and testimony of witnesses and production of evidence relating to matters within the commission's concern. 42 Pa. C.S. §2153(a)(2)-(6). It would seem most unlikely that the legislature, having empowered the commission only to request information and data from other governmental and private entities, intended that the obtaining of information from the judiciary could be mandated by the commission.

The Commonwealth contends that the commission's authority for imposing such a requirement on the courts derives from sub-section (a)(10) of Section 2153 which empowers the commission to "collect systematically and disseminate information concerning sentences actually imposed", and sub-section (c) of Section 2153 which provides in pertinent part that the commission "shall have such other powers and duties and shall perform such other functions as may be necessary to carry out the purposes of this sub-chapter. . . ." 42 Pa. C.S. §2153(a)(10), (c). The Commonwealth argues first that the power to collect systematically information concerning sentences actually imposed — as distinguished from the commission's other powers which allow it only to "request" other information and data — discloses a legislative intent that the commission gather comprehensive information on sentences and, therefore, the commission's sentencing form requirement "falls squarely within" this power. This argument misconceives a fundamental distinction between the judicial process on the one hand and the legislative and executive processes on the other. The executive and legislative branches of government are uniquely equipped with the authority and resources for broad-ranged and detailed information and data gathering and evaluation. The judicial process, however, essentially consists of the hearing and determination of individual cases. The facilities and resources available to the courts are basically limited to those necessary to perform this function. It does not follow, therefore, that the empowering of an executive or legislative agency or commission with the authority to gather information necessarily includes the right to direct the courts to assist in the data-gathering process. With specific regard to sentencing in criminal cases, all sentencing orders and

sentencing hearing transcripts are matters of public record and thus available to legislative or executive research or investigation. Accordingly, this court concludes that the Commonwealth's contention that the power to obtain information concerning court decisions necessarily includes the right to issue mandates to the courts to assemble and provide this information is without merit.

The Commonwealth's reliance on the "other powers and duties" provision of Section 2154(c) suffers from the same infirmity. Granting to the commission such other powers and duties as may be necessary to carry out its functions does not constitute a granting of authority to impose mandates on the courts. The Commonwealth, however, argues that without the "comprehensive sentencing information" obtainable through the use of the guideline sentence form, the commission would be unable to perform its statutory functions and that requiring completion and submission of the form is a minimal imposition upon the judiciary. In this regard, the Commonwealth, noting that the form is to be completed "at the court's direction", not necessarily by the judge personally, contends that the form provides a convenient aid in applying the guidelines, that it serves as the official record of the consideration of the guidelines and the reasons for the sentence imposed, and that the sentencing form requirement has no impact whatsoever on the sentencing process itself.

The limitations on the power of one of the co-equal branches of government to impose requirements on another have been addressed on a number of occasions by the appellate courts of this Commonwealth. As stated by the Supreme Court in Commonwealth v. Sutley, 474 Pa. 256, 378 A.2d 780-782 (1977):

"The doctrine of the separation of governmental powers into the legislative, executive and judicial departments has been inherent in the structure of this Commonwealth's government since its inception. . . . [T]he judicial branch is not subordinate to the other branches or government but is co-equal, distinct and independent. . . . This, it necessarily follows that any encroachment upon the judicial power by the legislature is offensive to the fundamental scheme of our government.

Accordingly, the courts will not "respect and follow legislative enactments . . . where such enactments are infringements on the judicial power, or where the provision is clearly incompatible with important judicial business, or impossible of judicial performance." Socialist Labor Case, 332 Pa. 78, 1 A.2d 831, 832 (1938).

The doctrine of separation of powers, however, does not prohibit interrelations and interaction among the branches of government. As stated by the Supreme Court:

"We recognize that the doctrine of the separation of powers was not intended to hermetically seal off the three branches of government from one another. It was obviously intended that there would be a degree of interdependence and reciprocity between the various branches. . . . It is also true . . . that there may be some areas where the dividing lines between the respective responsibilities of the three branches may be difficult to define." (Commonwealth v. Sutley, supra, 378 A.2d at 783.)

. . .

Under the system of division of governmental powers it frequently happens that the functions of one branch may overlap another. But the successful and efficient administration of government assumes that each branch will co-operate with the others.

(Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577, 579 (1949).)

The question presented by the instant case is whether the sentencing guideline form requirement exceeds the permissible interrelationship between the legislative and judicial branches of government. On the basis of: (1) the exclusive power vested in the Supreme Court to supervise the lower courts and to prescribe rules governing practice and procedure, and (2) the exclusive power of the judiciary over sentencing in individual cases, this court concludes that the guideline sentence form requirement is inconsistent with the doctrine of separation of powers and thus is not binding upon the courts.

The Supreme Court's power to make rules and supervise the courts is set forth in Article V, § 10 of the Pennsylvania Constitution. In pertinent part, this section provides:

"(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts. . . .

. . .

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, . . . including the power to provide for . . . the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court . . . . All laws shall be suspended to the extent that they are inconsistent with the rules prescribed under these provisions."

The foregoing authority and power vested by the Constitution in the Supreme Court is exclusive, and

incursion by the other branches of government into these areas is prohibited. In re 42 Pa. C.S. §1703, 482 Pa. 522, 394 A.2d 444 (1978). Moreover, although it is the legislature's function to determine what acts shall constitute crimes and to fix the penalties therefor, Commonwealth v. Glover, 397 Pa. 543, 156 A.2d 114 (1959), the imposition of sentences in individual cases within the limitations established by the legislature is exclusively a judicial function. Com. v. Sutley, supra; Com. v. Cain, 345 Pa. 581, 28 A.2d 897 (1942).[2]

Applying the foregoing principles to the question presently before this court, it is evident that the sentencing guideline form requirement is an unconstitutional intrusion into the exclusive powers of the judiciary. Requiring the sentencing court to direct the completion and submission of the guideline sentence form prepared by the commission, to execute and date the completed form and to make the form a part of the court record within a prescribed time period, clearly constitutes an establishment of rules governing the sentencing process. It is within the exclusive province of the Supreme Court to establish rules of practice and procedure for such matters as the documents and materials to be included in the record of a sentencing proceeding, the time limitations within which the lower court must act, and the manner in which the lower courts are to

---

2. As noted in the Sutley case, "the power of sentencing is one of the most critical and important duties vested in the judiciary. It is exercised on a case-by-case basis, after careful attention has been given to a myriad of facts including the gravity of the offense, the rehabilitative needs of the defendant and the necessity to adequately protect the public." Commonwealth v. Sutley, supra, 378 A.2d at 784 n.7; cf., Commonwealth v. Martin, 466 Pa. 118, 351 A.2d 650 (1976).

proceed under the sentencing limitations established by the legislature.[3] Thus, for example, given the requirement of Rule 1405(b) of the Pennsylvania Rules of Criminal Procedure that the sentencing court "*state* on the record the reasons for the sentence imposed" (Emphasis added), the commission may not at its whim require the court to set forth in writing on the sentencing guideline form the mitigating or aggravating circumstances considered by the court in imposing the appropriate guideline sentence. Moreover, requiring the completed sentencing forms to be made a part of the record in each individual case constitutes an impermissible determination by a legislatively-created entity as to the appropriate documentation and data to be included within the court records, much of which has no bearing whatever on the actual sentences imposed.[4]

The commission's position that requiring the completion and submission of the sentencing form is valid because it has no impact on the sentencing decision itself is an unduly restrictive interpretation of the separation of powers doctrine. The Supreme Court has ruled that it is not necessary for a legislative enactment to affect specific court decisions in order to be held violative of the separation of powers. In re 42 Pa. C.S. §1703, supra. In cases involving rule-making procedures, ibid, financial disclosure requirements, Kremer v. State Ethics Comm'n. Pa. , 469 A.2d 593 (1983), and the con-

---

3. The Supreme Court's rules governing sentencing procedures are set forth at Pa. R. Crim. P. 1401 et seq.

4. As previously noted, the commission failed to include in the sentencing guidelines the specific format and content of the sentencing form, thus retaining unfettered authority to modify and enlarge the form at any time.

duct of attorneys, Wajert v. State Ethics Comm'n. 491 Pa. 255, 420 A.2d 439 (1980), the Supreme Court has consistently ruled invalid legislation which infringes on the exclusive power of the court to supervise the courts and the practice of law therein.

The Commonwealth's contention that the burden placed on the courts by the sentencing form requirement is a minor one has previously been rejected by the Supreme Court in cases in which an unconstitutional intrusion into the powers of the judiciary has been found. In this regard the court has stated:

"[T]he practical immediate effect . . . is far less important than the principle of the separation of powers and the policies that it represents. . . . [T]he separation of powers doctrine has been thought to allow and indeed mandate ' "the court . . . to resist, temperately, though firmly, *any* invasion of its province, whether great or small.' " [In re 42 Pa. C.S. §1703, supra, 394 A.2d at 450. (Emphasis in original.)

In any event, we do not view the sentencing form requirement as a minor imposition on the judiciary. Requiring the courts to report their decisions in individual cases to the legislature is most troublesome. Whereas in the instant case the reporting of the sentence imposed in this drunk driving case might appear not to be unduly onerous or consequential, if the sentencing form requirement is held valid then it will be available for other commissions or agencies to impose similar reporting requirements in other areas of judicial decision-making as well, such as juvenile and domestic proceedings, custody cases, hearings on pre-trial and post-trial motions, civil and criminal jury trials, etc. The potential deleterious impact on the impartiality and in-

dependence of court decision-making of such reporting requirements is evident. The trial courts of this Commonwealth are responsible in individual cases to the law, the litigants, the public, and the appellate courts. As a co-equal branch of government, there can be no justification for requiring the judiciary to report to the legislature on its individual decisions.

Finally, it is apparent from the Commonwealth's presentation at the hearing and in its briefs that underlying its arguments is the position that the sentencing form requirement is the most efficient and inexpensive method of obtaining the data the commission desires. However, questions of efficiency and expense will not validate an otherwise impermissible violation of the separation of powers doctrine. As the United States Supreme Court so eloquently stated in a case involving the federal separation of powers doctrine:

". . . [T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution. Convenience and efficiency are not the primary objectives — or the hallmarks — of democratic government. . . .

. . .

The Constitution sought to divide the delegated powers of the new federal government into three defined categories, legislative, executive and judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility. The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted. Immigration and Naturalization Service v. Chadha, U.S. , , 77 L.Ed.2d 317, 340 (1983).

For the foregoing reasons, this court concludes that the commission's regulation requiring the completion and submission of the sentencing guideline forms is an unconstitutional violation of the separation of powers doctrine and thus not binding upon the courts.

### ORDER

Now, this July 24, 1984, for the reasons set forth in the foregoing opinion,

It is hereby ordered, directed and decreed that:

1. The Pennsylvania Commission on Sentencing Guideline Sentence Form submitted to this court by the Commonwealth at sentencing shall neither be completed not submitted to the Pennsylvania Commission on Sentencing; and

2. For the purpose of the record in connection with the foregoing opinion, the incomplete guideline sentence form as submitted by the Commonwealth shall be admitted into and made a part of the record in this matter.